CHARLES F. DUNHAM & another *vs.* ANN E. GANNETT, administratrix.

Dukes County. Jan. 28. — March 1, 1878. ENDICOTT & SOULE, JJ., absent.

On the question of the position of a certain bound of a way described in a bond as running, from a certain point, "thence on a straight line to the shop of A.," oral evidence is admissible to show that, at the date of the bond, there was an outside platform, extending along one side of A.'s shop, built at the same time, resting on the same foundation and used in connection with it, a platform so built being part of the shop.

CONTRACT on a bond, executed to the plaintiffs by the defendant's intestate, and conditioned to keep and cause to be kept at all times thereafter open and unobstructed, for the benefit of the plaintiffs, their heirs and assigns, a certain way in

Edgartown, described as "beginning at the northeast corner of a lot of land belonging to said plaintiffs;" [thence by various courses and distances which it is unnecessary to state;] "thence in an easterly direction to the south corner of William P. Chadwick's shop; thence on a straight line to the shop of Joseph V. Kelley; then across the way aforesaid to the first bound."

At the trial in the Superior Court, before *Bacon, J.*, it appeared that the alleged breach of the bond was the building of a fence within the limits of the way, and that the only question was as to the construction of the words in the bond, " to the south corner of William P. Chadwick's shop; thence on a straight line to the shop of Joseph V. Kelley." The plaintiffs contended that that line ran from the south corner of William P. Chadwick's shop to the most southern corner of the shop of Joseph V. Kelley, both shops being on the north side of the way, proved that the fence was within such line, and offered evidence tending to show that that corner was the nearest point to Kelley's shop; but this was denied by the defendant.

The defendant contended that the line referred to in the bond extended from the south corner of Chadwick's shop, (about which point there was no dispute,) to a point which was formerly the most southern corner of a platform, which was standing when the bond was given, and which was then a part of Kelley's shop. It was agreed that the fence was upon this line.

The defendant offered evidence tending to show that Kelley's shop was constructed about seventy years ago, was originally designed as a furniture shop, and was built in the following manner: The whole structure rested on piles driven in the ground, upon which rested certain timbers called false or lower sills, which were mortised into the ends of the piles. On these false or lower sills rested the true or upper sills, into which were built and mortised all the upright walls of the building. The lower or false sills extended out beyond the other sills, on the south side, about three feet, and upon them was built a platform, designed for drying and exposing furniture, which extended to the south the whole width of the shop, as far as the false sills, and was about three feet in height. The platform was built when the rest of the structure was, and was all standing substantially as built, at the time the bond was executed. The de-

fendant also offered to show that the premises described in the bond were part of an ancient and much used way, whose bounds were defined and well known to all parties, which way ran by, and was bounded in part by, the south side of the platform, and had existed from time immemorial ; that the bond was given in settlement of, and in consequence of, certain controversies between the parties, in regard to the use of the ancient way ; that the bounds recited in the bond were, and were intended to be, the bounds of this ancient way ; that the parties intended by the expression, "to the shop of Joseph V. Kelley," the most southern corner of the platform, which corresponded with the bounds of this ancient way, and that, subsequently to the giving of the bond, acts were done by the parties indicating that such was the construction put upon the words by them.

The plaintiffs objected to the evidence offered, and contended that the most southern corner of the upright walls of Kelley's shop was the point designated by the words of the bond. The judge thereupon refused to admit the evidence, and ruled that the expression, " to the shop of Joseph V. Kelley," should be construed to mean the corner of the upright main walls of the shop, at the time the bond was given ; that evidence could not be introduced showing that any other point was intended by the parties using the words ; that the evidence offered by the defendant was inadmissible ; and, no further evidence being offered, directed the jury to find, upon the facts proved by the plaintiffs, that there had been a breach of the bond.

The jury returned a verdict for the plaintiffs ; and the defendant alleged exceptions.

*H. M. Knowlton,* for the defendant.

*G. Marston,* for the plaintiffs.

AMES, J. The evidence was not offered to contradict or vary the written contract, but to apply it to the subject matter, and to show what in fact were the monuments and boundaries described in the bond. What was required was to determine a straight line from the south corner of Chadwick's shop " to the shop of Joseph V. Kelley." We are not to suppose that this line was intended to be so run as to cut off any portion of that shop ; and both parties appear to have understood the question to be as to the position of the southeasterly corner of Kelley's

shop. The inquiry was, Where was the corner at the date of the bond? The defendant's offer was to prove that at that date the platform extending along the south side of Kelley's shop was a part of the shop, built at the same time and used in connection with it, in the same manner as a porch, veranda, piazza or outside flight of stairs would have been. If so, the corner of the platform was the bound intended, and in that case the removal of the platform would not change the rights of the parties.

*Exceptions sustained.*