JAMES E. GRAVES *vs.* WILLIAM G. BROUGHTON.
WILLIAM G. BROUGHTON *vs.* JAMES E. GRAVES.

Essex.    January 14, 15, 1904. — February 26, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Evidence,* Extrinsic affecting writings. *Husband and Wife. Easement. Way. Practice, Civil,* New trial.

Oral evidence of the actual occupation and use of land by different owners is admissible to show what was meant by the words "in front of the house" in a series of deeds conveying respectively the lower half and the upper half of "the small piece of land in front of the house."

A husband cannot acquire by prescription a right of way over land of his wife who is living with him on adjoining land of his own.

Where, in two cases tried together involving various issues, exceptions were sustained upon one issue only, it was ordered that the new trial should be confined to that issue.

BRALEY, J. These are actions of tort in the nature of trespass brought respectively June 30 and July 20, 1900, to determine the title of the parties who are owners of contiguous estates, to a small strip of land in the immediate vicinity of their houses, and also the right of Graves to a way across the premises of Broughton to Harding's Lane in the town of Marblehead.

At the trial in the Superior Court verdicts were rendered in favor of Graves, and the cases are here on the exceptions of Broughton to a refusal to make certain rulings requested by him, and to the instructions given to the jury.

The alleged acts of trespass were the erection of a stone wall by Broughton on the strip of land in controversy by which the use of the way was cut off, and the alleged tortious act of Graves in tearing down a part of the wall, in order to obtain access to the way.

Neither of the litigants was able to establish his title, either to the land or to the easement claimed, by the terms of any express grant, and as the facts relied on to prove title by possession to the land do not necessarily tend to establish the right of way, it becomes advisable to consider the questions presented for decision separately.

The estate now owned by Broughton was formerly held in common by William Hammond, Nancy Meservey and Joseph W. Hammond. In 1831 by an indenture of partition they made a division of the property so that William and Nancy should be " seised and possessed of one undivided moiety," and Joseph of the " other moiety." These parts were respectively treated in subsequent conveyances by the tenants as held in severalty, and are referred to as the " lower half " and " upper half " of the premises. *Sparhawk* v. *Bullard*, 1 Met. 95, 99. *De Witt* v. *Harvey*, 4 Gray, 486, 491.

At the date of the partition the estate consisted of a small parcel of land, on which stood a dwelling house and outbuildings, but no description is given of its boundaries. The language used after designating the rooms of the house that formed the lower half, being, " together with one half of the small piece of land in front of the house, viz., that part which is below the bank or break in said land," and with the remainder of the house, the other tenant " shall have the upper half of said piece of land in front of the house." This description has never been changed in later deeds passing title to the land.

Under such general terms, resort must be had to parol evidence to ascertain what was meant by the words used, and the actual occupation and use of the land by different owners became admissible in evidence to determine the boundaries and the extent of the ownership of each tenant. *Stone* v. *Clark*, 1 Met. 378.

The title of James E. Graves to his homestead, which as he claimed included the land in dispute, came from his father

Eleazer T. Graves, who owned and used it at least from September 24, 1849, to September 24, 1886, when he conveyed it to his son, who has since been in possession. During this period Eleazer T. Graves lived with his wife Olive Graves, who owned the upper half of what is now the property of Broughton. For a portion of the same time John B. Graves, father of Eleazer T. Graves, owned and occupied the lower half of the same estate, and there was evidence at the trial that an iron stake set in the ground about fifteen and one half feet from the westerly side of the house of James E. Graves was the boundary of his land on the west side, and if so bounded his premises would include the strip in issue, and that it was placed as marking the line of division by Eleazer T. Graves and John B. Graves not later than May 14; 1869.

There was other evidence introduced by both parties not necessary to be recited, bearing upon the issue as to where the boundary line ran between the two estates, and which became a question of fact for the jury.

If the iron stake marked the dividing line, the wall was on the land of Graves, who was entitled to have his damages assessed for its unlawful construction and maintenance by Broughton. *Wishart* v. *McKnight*, 178 Mass. 356.

The instructions given on this branch of the case directed the attention of the jury to the uncertain character of the words of description used in the various deeds, and to the fact that evidence had been admitted solely to show what was intended to be included or described by the words "in front of the house" when applied to the land conveyed, and to fix the boundary line between the different portions. The instructions carefully pointed out the application of the evidence to the issue to be decided and no error of law appears.

There was sufficient evidence in the case to sustain the finding of the jury that at the time the wall was built James E. Graves was "the owner or in possession of the strip of land on which the wall in question stands."

It was conceded at the trial, that if a right of way across the land of Broughton was appurtenant to the estate of Graves, the easement had been acquired by prescription under an adverse user of the servient estate by Eleazer T. Graves.

A title by prescription rests upon the fiction of a lost grant, and it must appear that the owner of the estate which is to be subjected to the servitude, and who has the right to interrupt an acquisition of the easement, could have asserted his title against the owner of the dominant estate. *Barnes* v. *Haynes*, 13 Gray, 188. *Melvin* v. *Whiting*, 13 Pick. 184, 188. *Powell* v. *Bagg*, 8 Gray, 441, 443.

For a period of thirty-seven years during which Eleazer T. Graves owned and occupied the dominant estate the lower half of the land in front of the house and now owned by Broughton was held in fee by his wife Olive Graves, and though the easterly line of the " land in front of the house " may have been uncertain until apparently defined by the iron stake, yet in any use made by him of the way he would have to pass over her land in going to and from his lot to Harding's Lane, and in order to establish the right now claimed to have been acquired as appurtenant to his land, it would have to be held, not only that this use of the estate belonging to his wife was open and uninterrupted, but also adverse to her title.

Putting to one side the obvious consideration that where husband and wife are separately seised of lands so situated that it is convenient to use and enjoy the two estates in common, an easement by such user does not become appurtenant to either, a more serious difficulty to overcome is the legal situation of Olive Graves at the time when it is said that a continuous use of her land by her husband had ripened into a prescriptive right annexed to his estate. She was a married woman, and being under the disability of coverture could not make a valid grant to her husband of such an easement. If legal capacity to make the grant is shown to be absent, the presumption falls. It has accordingly been held that the presumption of a lost grant of an easement acquired by adverse use during a period sufficient to bar an action for a recovery of land in a case of disseisin cannot arise where, at the time when the period begins to run, the estate to be subjected to the easement is owned by an infant, an insane person, or a married woman.

While the use may be open and uninterrupted, it cannot be said that those who are unable by reason of legal incapacity to assert their right to interrupt are to be held to have acquiesced

therein, or that as to them it is adverse. *Melvin* v. *Whiting,* 13 Pick. 184. *Lowell* v. *Daniels,* 2 Gray, 161, 169. *McGregor* v. *Wait,* 10 Gray, 72, 74. *Powell* v. *Bagg,* 8 Gray, 441. *Edson* v. *Munsell,* 10 Allen, 557, 568. *Brayden* v. *New York, New Haven, & Hartford Railroad,* 172 Mass. 225.

The ruling requested, that Eleazer T. Graves could not during coverture gain by prescription a right of way over land belonging to his wife, should have been given, and the instructions to the jury that he could acquire such way "under a claim of right in opposition to the owner of the premises where his own wife was the owner," were erroneous.

It therefore becomes necessary to sustain the exceptions in the first case.

But as no further error appears, the new trial will be confined to this issue alone, and the exceptions in the second case must be overruled.

*So ordered.*

*J. H. Sisk,* for Broughton.
*F. V. McCarthy,* for Graves.